THE PEOPLE ex rel. JOHN H. ELLIOTT, Respondent, *v*. THE NEW YORK COTTON EXCHANGE, Appellant.

*Corporation — Power to adjust controversies between members — Improper conduct — — appeal to court to determine right to membership is not — Expulsion of member.*

Where the charter of a corporation declared its purpose, among other things, to be "to adjust controversies between its members and to establish just and equitable principles in the cotton trade," and gave it power to make all proper and needful by-laws, not contrary to the Constitution and laws of the State of New York or of the United States; and "to admit new members and expel any member in such manner as may be provided by the by-laws;" and the by-laws provided for expulsion for improper conduct, but did not state what should be considered as such:

*Held,* that there being in the charter or by-laws of the corporation, no express or implied authority to determine who was the owner of a right to a membership in dispute, a member was not guilty of improper conduct warranting his expulsion, for resorting to the courts to prevent the corporation from disposing of such a right claimed by him.

That in refusing to submit to a report against his title, a member was not acting in antagonism to the corporate power of "adjusting controversies between its members" or of "establishing just and equitable principles in the cotton trade."

That his right to appeal to another tribunal, if to be foreclosed, should be so by explicit contract or agreement (not shown in this case), not by mere construction of language employed in a by-law, or by implication from something contained in it; for forfeitures depend upon clear and explicit language, and are even then looked upon with disfavor, and the presumption should be against the power to expel, except for the causes recognized in the adjudged cases.

Appeal from an order made at Special Term, sustaining a demurrer to a return to a writ of mandamus requiring the defendant, its board

of officers and managers to rescind an order for the expulsion of the relator and restore him to his membership, or show cause, etc.

The facts set out in the return were briefly as follows : In 1873 the relator was a member of the Cotton Exchange.  John H. Valentine, also a member, was in default upon a contract, by reason of which default the by-laws provided a proceeding to dispose of his right of membership to make good the amount due upon his contracts.  While the proceeding was pending, the relator appeared before the appropriate committee having the matter in charge, and made a claim that he owned the right of membership of said John H. Valentine, by virtue of a bill of sale.  The board of managers thereupon referred the claim of the relator to such right of membership to its supervisory committee, to take evidence upon oath in relation to the claim, and report thereon.  Notice of the reference was given to the relator, and he appeared and was personally examined under oath, in relation to his claim.  He also called the said John H. Valentine, and caused him to be examined as a witness, to sustain his claim.

The committee took the testimony and reported thereon to the board of managers, who declared the transfer of the membership to the relator void, and gave him notice thereof.  It then continued its proceedings against the said John H. Valentine, and directed a sale of his right of membership.  The relator thereupon brought an action in the Supreme Court to restrain the Cotton Exchange from selling the said right of membership, on the ground that it was his, and obtained an injunction restraining the sale.  All the proceedings of the Cotton Exchange against the relator to expel him were had in pursuance of its charter, by-laws, rules and regulations.  He put in an answer to the complaint made against him, had notice of the meeting of the committee in reference to the complaint, appeared before it, and admitted before it that he knew the right of membership of John H. Valentine was advertised pursuant to the resolution of the board of managers, and that the proceedings leading to the advertisement for sale, were done and had in pursuance of the provisions of the by-laws ; that he knew one of the purposes of the Exchange, was to settle within itself controversies between members, and that each member bound himself on signing the constitution to abide by all rules, by-laws and regula-

tions of the defendant. The committee thereupon made a report, on receiving which relator was expelled by a vote of fifteen ayes to three nays.

*William Tracy* and *William M. Evarts*, for the appellant.

*John A. Foster*, for the relator.

Brady, J. :

John H. Valentine, a member of the appellant's corporation, was expelled, and it was claimed as a result of that proceeding that his right of membership was forfeited, and became the subject of sale by them.

The relator asserted his ownership of that right, and the committee charged with the investigation thereof decided adversely to him.

He then commenced an action against the appellants, and obtained an injunction restraining them from selling the right. For this act he was arraigned and expelled. The committee reported on the subject, among other things, as follows:

"That John H. Elliott claims to be entitled to said seat through a bill of sale thereof, from said John H. Valentine; that during the progress of the proceedings, which culminated in the advertisement of the seat of said John H. Valentine for sale, the said John H. Elliott was fully and perfectly cognizant thereof; that prior to the report of your committee, which proposed the resolution directing the sale of said seat, the said John H. Elliott had an opportunity afforded him to prove his claim to said seat, which he essayed to do, but he failed to so establish to the satisfaction of your committee.

"That the injunction which John H. Elliott caused to be served upon the Exchange, had for its purpose to prevent a sale of the seat of John H. Valentine, which sale had been directed by a resolution of your board, based upon proceedings to that end, done and had in strict conformity with the provisions of your by-laws.

We therefore report that, in our opinion, John H. Elliott has been guilty of improper conduct, as alleged in the complaint against him, and that in causing the aforesaid injunction to be served

on the Exchange, he has acted in violation of the by-laws and charter of your Exchange, and of the obligations which he assumed when he signed the charter and by-laws, and in contravention of one of the main purposes for which this Exchange was established, ' to adjust controversies between its members.'

" We therefore offer the following resolution :

"*Resolved*, That John H. Elliott be, and he hereby is, expelled from membership in the New York Cotton Exchange."

The charter of the appellants gives them power to make all proper and needful by-laws not contrary to the Constitution and laws of the State of New York or of the United States, and to expel any member in such manner as may be provided by the by-laws. The by-laws, on the subject of expulsion, contain a section which is as follows :

" Section 1. If complaint of improper conduct is made against a member of the Exchange, it must be in writing, and addressed to the supervisory committee, specifying the particular act complained of, together with all the documentary evidence bearing on the case that the complainant can furnish, together with a list of the witnesses he desires to be examined on said complaint."

And it is under this by-law only that the power of expulsion is claimed for the cause alleged. The question to be disposed of will be considered on the assumption that the by-law is authorized and in effect.

It will be perceived that it is not stated specifically, in any one or more respects in this action, what would or would not be regarded as improper conduct, and the field is open, therefore, to the consideration of such acts and to such construction upon them, as the managers present and voting at the meeting and constituting two-thirds may think proper to investigate or adopt.

There is neither in the charter of the appellants, nor in the by-laws, however, any express authority to consider and determine who is the owner of a right of membership, which is in dispute. Whatever may be their power over matters directly connected with the business which prompted their organization, or with the adjustment of controversies between its members or the establishment of just and equitable principles in the cotton trade, or acquired by voluntary submission to them or their committees under the charter

and by-laws, there is no express authority conferred upon them to pass upon the title to a seat among them; nor is there any thing in the by-laws to which our attention has been called authorizing it incidentally or by implication.

They could not, therefore, usurp the power absolutely, to pass upon the relator's claim, and when he resorted to the courts to prevent them from disposing of his property, he was not only not guilty of improper conduct, but asserting a right secured to him by the fundamental law of the land. It may be that a member would be bound by the decision of the appellants in specified cases, which being properly the subject of a reasonable by-law, duly authorized, would be recognized as lawful within the principles governing them. (2 Kent's Com., 296; Angell & Ames Corp., § 247, and cases cited; *People ex rel. Thatcher* v. *The N. Y. Coml. Assn.*, 18 Abb. Pr., 271.) The appellant, however, on such subjects, can take nothing by implication. Forfeitures depend upon clear and explicit language, and are even then looked upon with disfavor. Expulsions from a corporation should not be accomplished by hurried and incomplete investigation.

A member of a corporation may so hedge himself in by agreement as to yield the protection which one seeks in the ordinary affairs of life, and enlarge the authority that may be used against him, but when it is said he has done so, it should appear beyond all reasonable doubt.

The presumption should be against the power to expel except for the causes recognized by the adjudged cases (*White* v. *Brownell*, 4 Abbott's Pr. [N. S.], 192), because it is in the nature of a forfeiture, which the law does not favor. The right to appeal to another tribunal, if to be foreclosed, should be so by explicit contract or agreement, not by mere construction of language employed in a by-law, or by implication from something contained in it; when this power is assumed, and upon either of these elements, and there is any doubt of its existence, it should be rejected in the administration of the law.

This seems to be just doctrine. The power should be unquestionable. When the relator refused to submit to the report against his title, he was not acting in antagonism to the power of the appellant of "adjusting controversies between its members," or of "estab-

lishing just and equitable principles in the cotton trade," nor was he rebelling against the judgment pronounced against Valentine, for which express provision was made in the by-laws.

He had no controversy with any member or officer. He said simply, you cannot sell the membership of Valentine because it belongs to me, and I do not admit your authority to dispose of my rights in regard to it. In this he was correct, and the appellant in error. In the case of the *People ex rel. Thatcher* v. *The N. Y. Coml. Assn.* (18 Abb. Pr., 271), expulsion was authorized if the member was guilty of willfully violating the charter or by-laws of the association, or guilty of fraudulent breach of contract, or other gross misconduct, and the charge was of obtaining goods by false pretenses. It bears no analogy to the case on hand. Here there is no provision in the by-laws for the trial of the title to a seat, and there is, therefore, in refusing to submit to the report, no violation of the by-laws. There is here no charge either involving moral turpitude or of fraudulent conduct of any kind.

The act complained of is one confessedly correct, unless in violation of some compact by which the right to do it was surrendered, which has not been shown as already suggested. The order made at Special Term was for these reasons proper. The representatives of the appellants having the matter in charge have acted, no doubt, upon convictions conscientiously entertained both as to their power and the injurious conduct of the relator, but the best of mankind may err in judgment.

Order affirmed, with ten dollars costs, and the disbursements of this appeal.

Davis, P. J., and Daniels, J., concurred in the result.

Order affirmed, with ten dollars costs and disbursements.